## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PT. ASIA PACIFIC FIBERS TBK,<br><br>    Plaintiff,<br><br>  v.<br><br>THE UNITED STATES,<br><br>    Defendant. | Court No. 22-00007 |

## COMPLAINT

Plaintiff, PT. Asia Pacific Fibers Tbk ("Asia Pacific"), by and through its attorneys, Fox Rothschild LLP, alleges and states as follows:

### THE ADMINISTRATIVE DECISION TO BE REVIEWED

1. Asia Pacific contests certain aspects of the final determination of the antidumping investigation *Polyester Textured Yarn from Indonesia* (A-560-838), issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). The contested determination covered Plaintiff's exports of polyester textured yarn that entered into the United States between October 1, 2019 and September 30, 2020. The contested determination, and the antidumping duty margin assigned to Asia Pacific, was subsequently incorporated in an antidumping order. See *Polyester Textured Yarn from Indonesia, Malaysia, Thailand, and the Socialist Republic of Vietnam (A-560-838, A-557-823, A-549-843, A-552-832): Antidumping Duty Orders*, 86 Fed. Reg. 71031 (December 14, 2021).

2. Commerce issued the contested final determination on October 18, 2021. Notice of the final determination was published in the Federal Register on October 25, 2021. *See Polyester Textured Yarn from Indonesia: Final Affirmative Determination of Sales at Less the Fair Value,* 86 Fed. Reg. 58875 (October 25, 2021). The findings and conclusions of the contested determination were set forth in an accompanying Issues and Decision Memorandum for the Final Determination, dated October 18, 2021 ("Final I&D Memo").

## JURISDICTION

3. Plaintiff brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and § 1516a(a)(2)(B)(i) to contest the aforesaid final determination. This Court has sole jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

4. Plaintiff, an Indonesian producer and exporter to the United States of polyester textured yarn, is an interested party within the meaning of 19 U.S.C. § 1677(9)(A) and 19 U.S.C. § 1516a(f)(3). As an interested party that actively participated in the underlying administrative proceeding, Plaintiff has standing to bring this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(e).

## TIMELINESS

5. This action is timely as this Complaint is being filed within 30 days of the filing of the Summons that initiated this case. *See* Rule 3(a)(2) of the Rules of the U.S. Court of International Trade and 28 U.S.C. § 2636 (c).

## STANDARD OF REVIEW

6. This Court reviews final determinations of antidumping investigations issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a (b)(1)(B)(i).

## STATEMENT OF FACTS

7. Commerce initiated the contested antidumping investigation on November 23, 2020. *Polyester Textured Yarn from Indonesia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations,* 85 FR 74680 (November 23, 2020). Asia Pacific was selected as a mandatory respondent and participated in the investigation by responding fully to all of Commerce's information requests in a complete and timely manner. Asia Pacific responded separately to Section A (general, corporate, sales/distribution activities), Sections B (home market sales) and C (United States sales), and Section D (cost of production) of the initial questionnaire and to seven supplemental questionnaires in a complete and timely fashion.

8. Commerce published the preliminary determination in the Federal Register on June 3, 2021. *Polyester Textured Yarn from Indonesia: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 86 FR 29742 (June 3, 2021)  In the preliminary determination, Commerce used the information provided by Asia Pacific in its questionnaire responses and calculated a preliminary antidumping margin for Asia Pacific equal to 9.21%. Commerce's preliminary determination did not apply total or partial adverse facts available ("AFA") to Asia Pacific.

9. On July 9, 2021, Commerce issued a Questionnaire in Lieu of Verification to Asia Pacific. On July 15, 2021, Commerce withdrew the questionnaire due to the deepening Covid 19 crisis in Indonesia. Commerce issued a Revised in Lieu of Verification Questionnaire to Asia Pacific on August 4, 2021. Asia Pacific submitted its timely response to the Revised Verification Questionnaire on August 13, 2021.

10. Asia Pacific concurred with Commerce's preliminary determination and did not file an administrative case brief. In response to Petitioner's administrative cased brief that addressed issues related to Asia Pacific, Asia Pacific submitted a timely rebuttal brief on September 21, 2021.

11. On October 25, 2021 Commerce published the final determination in the Federal Register. *Polyester Textured Yarn from Indonesia*, 86 Fed. Reg. at 58875, *supra*. In the final determination Commerce reversed its findings from the preliminary determination. "Based on our analysis of Asia Pacific's verification questionnaire response, we have not calculated an estimated final dumping margin for Asia Pacific and, instead, have based Asia Pacific's final rate on total adverse facts available (AFA)." Final I&D Memo at 3. Asia Pacific's total AFA margin in the final determination was equal to 26.07%.

12. Commerce's published the antidumping duty order in the *Federal Register* on December 14, 2021. *Polyester Textured Yarn from Indonesia, Malaysia, Thailand, and the Socialist Republic of Vietnam (A-560-838, A-557-823, A-549-843, A-552-832): Antidumping Duty Orders,* 86 Fed. Reg. 71031 (December 14, 2021). On January 13, 2022, Asia Pacific filed a timely summons to initiate this action.

## STATEMENT OF CLAIMS

Plaintiff challenges the *Final Determination* of the antidumping investigation for the following reasons:

## COUNT 1

13. Paragraphs 1-12 are incorporated by reference herein.

14. Pursuant to 19 U.S.C. § 1677m(i), Commerce "shall verify all information relied upon in making … a final determination in an investigation." By failing to conduct an on-site verification of Asia Pacific as required by the statute, Commerce's final determination was contrary to law.

## COUNT 2

15. Paragraphs 1 through 14 are incorporated by reference herein. Commerce issued Asia Pacific a questionnaire "in lieu of verification." Although Commerce treated its verification questionnaire as equivalent to an on-site verification exercise, Commerce departed from its standard on-site verification practices.

16. Commerce detailed various deficiencies with respect to Asia Pacific's response to the sales portion of the verification questionnaire, including the submission of illegible documents or untranslated documents, the failure to submit supporting documentation, and submitting supporting documentation that did not correspond to previously submitted documentation. *See* Commerce Memorandum: Final AFA and Selection of AFA Rate for PT Asia Pacific Fibers Tbk, dated October 18, 2021. Commerce therefore concluded that the sales portion of Asia Pacific's verification response was unverifiable.

17. By issuing a questionnaire in lieu of an on-site verification, Commerce denied Asia Pacific the opportunity to explain or clarify its documentation to Commerce personnel conducting the verification, and upon Commerce's consent, to provide corrective information

during the on-site verification. Commerce's failure to afford to Asia Pacific the same opportunities provided in on-site verifications when using the verification questionnaire procedure in this proceeding constituted an abuse of administrative discretion and was otherwise not in accordance with law.

## COUNT 3

18. Paragraphs 1 through 17 are incorporated by reference herein. As a basis for applying Total AFA, Commerce's final results claimed that Asia Pacific's reported product-specific costs and the total POI cost transfers allocated to POY and SDY products did not reconcile with Asia Pacific's trial balance and were not supported by supporting documentation requested by Commerce (including documentation from the financial system, screen prints for relevant inquiries to the accounting system, tracing of reported amounts to the company's trial balance and production records, and screen shots from the financial, accounting and production systems). I&D Memo at pages 12-14.

19. Asia Pacific, however, emphasized throughout the proceeding that it did not have a formal cost accounting system that was integrated with its financial accounting system. Rather, Asia Pacific reported actual costs consumed for each primary yarn product and allocated all other costs to product-specific CONNUMS as recorded in the financial accounting system.

20. It is apparent that Commerce either misinterpreted or did not understand Asia Pacific's questionnaire responses. Commerce's repeatedly requested that Asia Pacific provide source accounting records and screen shots from the accounting system -- documents that simply do not exist. Commerce further ignored the fact that the total costs of Asia Pacific's yarn division, which were allocated across the four primary yarn products to derive the reported product-specific production costs, reconciled to both the trial balance and Asia Pacific's audited

financial statements. Commerce's application of total AFA as to Asia Pacific for failing to provide documentation that did not exist was unsupported by substantial evidence in the administrative record.

### COUNT 4

21. Paragraphs 1-20 are incorporated by reference herein. Commerce claimed that another basis for the application of total AFA was Asia Pacific's failure to provide supporting documentation from the financial system to confirm reported quantities and values of PTA and MEG used to produce the polyester chips, the main raw material components used to produce merchandise under consideration. Final I&D Memo at pages 14-15.

22. Commerce acknowledged that Asia Pacific provided a detailed inventory movement schedule for both PTA and MEG that linked the CONNUM-specific raw material cost worksheet to the beginning and ending inventory values for polyester chips that tied directly to Asia Pacific's trial balance. Final I&D Memo at 14. Commerce's final determination, however, however faulted Asia Pacific for not providing additional supporting documentation to tie the inventory movement schedule to its accounting system and to provide screen shots from its accounting system.

23. As discussed above, Asia Pacific's responses made clear that the company does not have a formal cost accounting system that is integrated with its financial accounting records. Commerce's application of total AFA for Asia Pacific's failure to provide supporting documentation that simply does not exist is unsupported by substantial evidence in the administrative record and is otherwise contrary to law.

## COUNT 6

24.     Paragraphs 1-23 are incorporated by reference herein.  Commerce's final determination asserted that Asia Pacific failed to provide logical explanations for its claims that there were no differentiating costs among certain product characteristics (*i.e.*, number of plies, number of filaments, cross section shape, and intermingling).  Final I&D Memo at 16.  Commerce further stated that Asia Pacific failed to provide supporting documentation for its claims that these product characteristics did not impact costs.  *Id*. at 17.

25.     Asia Pacific did in fact provide logical explanations why each of the four differences in the physical characteristics mentioned above had no impact the on the cost of production because they there was no differences in the amount of raw materials used or the number processing steps undertaken, and that the efficiency of the processes were the same for products within the same denier range.  Asia Pacific 2nd Supplemental D response at pages 10-11.

26.     Moreover, while Commerce recognized that Asia Pacific's accounting system did not track costs for these physical characteristics, Final I&D Memo at 16, fn. 90, Commerce placed an unreasonable burden upon Asia Pacific to prove a negative by requiring that it provide supporting documentation for its claim that these differences in product characteristics do not impact costs.  Id. at 17.

27.     Commerce's application of total AFA as to Asia Pacific based on these findings in the final determination is unsupported by substantial evidence in the administrative record and is otherwise contrary to law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a) hold that Commerce's final determination was unsupported by substantial evidence on the administrative record and was otherwise not in accordance with law with respect to the claims advanced by Plaintiff in this Complaint;

b) remand the Final Determination to Commerce with instructions to recalculate Asia Pacific's final margin without the application of total AFA and incorporate into the remanded final determination the information provided by Asia Pacific in its questionnaire responses; and

c) provide further and other relief in accordance with the Court's decision.

Respectfully submitted,

*/s/ Ronald M. Wisla*
Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
Tel: (202) 794-1183
Email: rwisla@foxrothschild.com

*Counsel PT. Asia Pacific Fibers Tbk*

February 14, 2022