## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  Richard K. Eaton, Senior Judge**

| | |
|---|---|
| PT. ASIA PACIFIC FIBERS TBK, | |
| Plaintiff, | |
| v. | Court No. 22-00007 |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| UNIFI MANUFACTURING, INC., | |
| and | |
| NAN YA PLASTICS, CORP., | |
| Defendant-Intervenors. | **PUBLIC DOCUMENT** |

**REPLY BRIEF OF PLAINTIFF PT. ASIA PACIFIC FIBERS TBK IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, N.W.
Suite 500
Washington, DC  20006
Tel: (202) 794-1182
Email: llevinson@foxrothschild.com

*Counsel for Plaintiff PT. Asia Fibers Ptk.*

November 8, 2022

**TABLE OF CONTENTS**

TABLE OF CONTENTS    i

TABLE OF AUTHORITIES    ii

I.    APF's Challenge to Commerce's Verification Methods Is Not Precluded by the Doctrine of Exhaustion of Administration Remedies    2

II.    Commerce Has Since Modified its Verification Procedures To Rectify the Marked Deficiencies that Occurred in the APF Case    5

III.    Commerce's Verification Was Not Reasonable Under Chevron Two    6

IV.    The Determination of Adverse Facts Available Is Unsupported by Substantial Evidence    9

V.    CONCLUSION    10

i

139781215.1

## TABLE OF AUTHORITIES

### FEDERAL STATUTES

19 U.S.C. § 1677m(i)         1, 6

28 U.S.C. § 2637 (1982)         2

28 U.S.C. § 2637(d)(1982)         2

### FEDERAL REGULATIONS

19 C.F.R. § 351.307         8

19 C.F.R. § 351.307(c)         1

### FEDERAL CASES

*Foshan Shunde Yongjian Housewares & Hardwares Co., Ltd. v. United States,*
896 F. Supp. 3d 1313, 1325 (Ct. Int'l Trade 2013)         6

*Goodluck India v. United States,*
11 F.4th 1335, 1343-44 (Fed. Cir. 2021)         7

*Jacobi Carbons AB v. United States,*
992 F. Supp. 2d 1360, 1367 (Ct. Int'l Trade 2014),
aff'd, 619 F. App'x 992 (Fed. Cir. 2015)         2, 3

*JTEKT Corp. v. United States,*
675 F. Supp. 3d 1206 (Ct. Int'l Trade 2009)         6

*Lifestyle Enter., Inc. v. United States,*
35 C.I.T. 158, 169 n.17 (2011)         3

*Qingdao Taifa Grp. Co. v. United States,*
637 F.Supp.2d 1231, 1236 (2009)         3

*Timken Co. v. United States,*
10 CIT ___, 630 F.Supp. 1327, 1334 (1986)         3

*Torrington Co. v. United States,*
68 F.3d 1347, 1352 (Fed. Cir. 1995)         8

### ADMINISTRATIVE DECISIONS

*Polyester Textured Yarn from Indonesia:*
86 FR 29742 (June 3, 2021)         3

*Polyester Textured Yarn from Indonesia:*
86 Fed. Reg. 58875 (October 25, 2021)         9

139781215.1

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  Richard K. Eaton, Senior Judge**

| | |
|---|---|
| PT. ASIA PACIFIC FIBERS TBK, | |
| Plaintiff, | Court No. 22-00007 |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| UNIFI MANUFACTURING, INC., | |
| and | |
| NAN YA PLASTICS, CORP., | |
| Defendant-Intervenors. | |

**REPLY BRIEF OF**
**PLAINTIFF PT. ASIA PACIFIC FIBERS TBK IN SUPPORT OF ITS RULE 56.2**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Plaintiff Pt. Asia Pacific Fibers TBK ("Asia Pacific or APF") respectfully submits this

reply to the response brief filed by the United States ("the Government") on September 23, 2022.

The Government has not identified a lawful justification for the Department of Commerce's

("Commerce") failure to conduct a reasonable verification that would have best replicated an

actual on-site verification pursuant to 19 U.S.C. § 1677m(i).  Nor has the Government justified

its own failure to issue a verification report as required by 19 C.F.R. § 351.307(c).

I.      **APF's Challenge to Commerce's Verification Methods Is Not Precluded by the Doctrine of Exhaustion of Administrative Remedies**

The Government argues that APF failed to exhaust its administrative remedies with regard to the lawfulness of Commerce's verification because it did not raise the issue before the agency.  Government Response Brief at 14-21.  This argument is highly flawed because the issue of whether the verification was conducted properly did not arise until after the final determination.   APF learned for the first time that the verification methodology had yielded significant legal and factual issues upon issuance of the final determination.  In the preliminary determination, Commerce calculated a rate for APF based on the very same cost and sales data that it deemed unreliable for purposes of the final determination.  APF cooperated by responding in full to all post-preliminary questionnaires and had no reason whatsoever to suspect that it would be saddled with adverse facts available in the final determination.   APF could not have anticipated that Commerce would misinterpret data in the verification report which would lead it to assign the company a punitive rate even though it had calculated a rate for purposes of the preliminary determination.  Stated simply, APF never had a **"full and fair opportunity to raise the issue[s] at the administrative level."** *See Jacobi Carbons AB v. United States*, 992 F. Supp. 2d 1360, 1367 (Ct. Int'l Trade 2014), aff'd, 619 F. App'x 992(Fed. Cir. 2015)

Exhaustion of administrative remedies is an absolute requirement in the Court of International Trade only in classification actions, with a limited exception for pre-importation classification rulings. *See* 28 U.S.C. § 2637 (1982).  In all other civil actions before this Court, Congress has directed only that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d) (1982) (emphasis added). The judicial determination of whether to require exhaustion of remedies in non-classification actions is thus individual to the circumstances of each case, with each exercise of

2

judicial discretion in not requiring litigants to exhaust administrative remedies characterized as "an exception to the doctrine of exhaustion." *See Timken Co. v. United States*, 10 CIT ___, 630 F. Supp. 1327, 1334 (1986).

This Court has held that a party may seek judicial review of an issue that it did not raise in a case brief where Commerce did not raise the issue until its final decision. *See Lifestyle Enter., Inc. v. United States*, 35 C.I.T. 158, 169 n.17 (2011) (an importer's claim is not barred by the exhaustion doctrine where Commerce changes its position from the preliminary determination to the final determination); *Qingdao Taifa Grp. Co. v. United States*, 637 F. Supp. 2d 1231, 1236 (2009) ("[a] party, however, may seek judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level").

The exhaustion doctrine does not require a party to be clairvoyant or "predict" issues that may subsequently arise in a final determination that has not yet been issued. APF had no reason to believe that Commerce would depart so dramatically in the final determination from its preliminary determination. In highly relevant language, this Court observed in *Jacobi Carbons AB* that "[i]t is simply too much to ask of the parties to anticipate (1) that Commerce would change the surrogate country between the preliminary and Final Results, (2) the reasons that the Department would state for deciding to change surrogate countries, and (3) precisely how Commerce would value the various inputs." *Jacobi Carbons AB v. United States*, 992 F. Supp. 2d. 1360, 1367 (Ct. Int'l Trade 2014), aff'd, 619 F. App'x 992 (Fed. Cir. 2015)

Significantly, APF's case was one of the first investigations in which Commerce experimented with issuing a questionnaire in lieu of verification. The COVID pandemic thrust

3

the investigation into uncharted territory.  APF responded in full to the questionnaire in lieu of

verification (notwithstanding the significant impediments associated with the COVID pandemic

such as no access to its offices).  The company had no inkling until issuance of the final

determination that Commerce would view its response as deficient.  APF could neither have

anticipated the issuance of adverse facts available nor the reasons that Commerce would state in

support thereof.   Had Commerce issued a verification report identifying the alleged deficiencies,

APF would have at least been alerted to potential problems and would have addressed them in

the case briefs that are normally filed after the issuance of the verification reports.  Significantly,

however, Commerce did not issue a verification report and APF was absolutely blindsided by the

final determination.

The Government's brief recites a litany of irrelevant facts[1] that allegedly should have

prompted APF to object to the verification procedures before they actually occurred.  According

to the Government, APF had ample opportunity to object, for example, when: (1) "Commerce

notified the parties that it intended to verify through alternative means in lieu of an on-site

verification" (Gov. Response Brief at 7); (2) petitioner acknowledged Commerce's recent

practice to issue an in lieu of on-site verification (Gov. Response Brief at 15); (3) Commerce

issued its verification questionnaire (Gov. Response Brief at 15); and (4) Commerce issued its

administrative briefing schedule (Gov. Response Brief at 16); and (5) even after Commerce

issued its final determination. (Gov. Response Brief at 16).   The Government does not explain

how any of these events should have triggered objections from APF in the absence of any

---

[1] The Government's Response Brief also contains numerous irrelevant references to the number of extensions of time for responding to questionnaires accorded to APF during the administrative proceeding. *See e.g.* Gov. Reply Brief at 6, 8.  Conveniently, the Government leaves out the pertinent fact that these extensions were primarily due to the lockdown caused by the COVID pandemic, which was at its height in Indonesia during the investigation.

4

adverse impact on the company.  None of these events signaled to APF that Commerce would

dramatically depart from the calculation methodology used in the preliminary determination.

APF had no warning, until the final determination, that the absence of the normal "back and

forth" dialogue that occurs routinely between a respondent and the agency during an on-site

verification would prove to be so highly detrimental.  The lack of a verification report

compounded the problems as Commerce appeared to have misunderstood the data, yet never

communicated that fact until the final determination (after the time for briefing had elapsed).

**II.**     **Commerce Has Since Modified its Verification Procedures To Rectify the Marked Deficiencies that Occurred in the APF Case**

In apparent recognition of the profound deficiencies associated with the questionnaire in

lieu of verification, Commerce has since abandoned the methodology entirely (a fact not

acknowledged in the Government's brief) and has developed a method of conducting verification

through a remote, virtual videoconference (where an on-site verification is not feasible or

convenient).  *See e.g.* 2020-2021 Antidumping Duty Administrative Review of Certain Collated

Steel Staples from the People's Republic of China: Verification Agenda, Case A-570-112 (Oct.

21, 2022) (attached as Exhibit 1, hereto).[2]  This new virtual verification allows the parties to

interact with Commerce and to explain company documentation, which is reviewed

---

[2] Commerce either has conducted or announced an intent to conduct virtual verifications in the below sample cases in recent weeks:

- Countervailing Duty Investigation of Barium Chloride from India (C-533-909);
- Circumvention Inquiry of the Antidumping Duty Order on Certain Welded Carbon Steel Standard Pipes and Tubes from India (A-533-502); and
- Countervailing Duty Administrative Review of Certain Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China (C-570-980).

simultaneously by the parties in the videoconference.  Prior to the video conference, Commerce

issues a verification "agenda" (virtually identical to a verification outline).  After the

videoconference and prior to the deadline for case briefs, a verification report is prepared by the

analysts.  The parties then have the opportunity to comment on the verification report in their

case briefs, an opportunity that APF was denied because no verification report was ever issued.

This remote procedure was not made available to APF, but would have likely solved

many of the misunderstandings and alleged discrepancies identified by Commerce. APF

understands that it was one of the first respondents to have been verified during the COVID

pandemic and that virtual verifications have evolved as time has elapsed.  Nonetheless, APF

should not be treated differently than the respondents who are experiencing the benefits of a

remote virtual verification.  APF was entitled to the same due process as any other respondent

and the timing of its verification should not be determinative of the applicable procedures.  To

treat APF differently than the respondents undergoing remote verification today is arbitrary and

capricious.  This Court has "faulted Commerce for treating one respondent differently than the

others without providing sufficient explanation for the disparate treatment." *Foshan Shunde*

*Yongjian Housewares & Hardwares Co., Ltd. v. United States*, 896 F. Supp. 3d 1313, 1325 (Ct.

Int'l Trade 2013) (citing *JTEKT Corp. v. United States*, 675 F. Supp. 3d 1206 (Ct. Int'l Trade

2009).

**III.     Commerce's Verification Was Not Reasonable Under Chevron Two**

The plain language of the statute governing verification (19 U.S.C. § 1677m(i)) does not

compel an on-site verification (although it does require verification in an investigation).  This

Court must therefore consider whether Commerce's verification methodology in this case was

reasonable under *Chevron* step two.   Yet, the Government argues that APF has not shown "that

6

Commerce's verification was contrary to law or an abuse of Commerce's discretion considering the global pandemic."  Gov't Brief at 22.

The Government argues further that the statute "gives Commerce wide latitude in its verification procedures."  Yet, the very case cited by the Government also states unambiguously that "Commerce's discretion has limits."  *See Goodluck India v. United States*, 11 F.4th 1335, 1343-44 (Fed. Cir. 2021).   Commerce has developed and refined on-site verification procedures in foreign countries over the past forty years.  A pattern of practice and certain principles have been established during that time that assures that respondents are treated equally across different cases and in different countries.  Contrary to the Government's view, APF has indeed shown that the in lieu of verification procedure conducted by Commerce was not reasonable in that it did not simulate the critical elements of an on-site verification that have become an integral part of a thorough investigation.

The parties agree that Commerce's verification consisted of the mere issuance of a questionnaire.  Gov't Brief at 22.  There was no verification outline, no dialogue between APF and Commerce, no opportunity for APF to clarify the company documentation submitted to Commerce, and no opportunity for Commerce to probe the evidence, all of which have become standard procedures in on-site verifications over the years.  Commerce typically assigns "homework" to company officials to prepare clarifying documentation for the following day, yet another element in the on-site verification that fosters communication and dialogue.  Even in the remote virtual videoconferences that Commerce is currently conducting, Commerce warns in its verification agenda that "[i]n addition to examining supporting documentation, the verifiers will need to speak to appropriate personnel concerning your clients' questionnaire responses and other information submitted on the record of the proceeding."  *See* Verification Agenda from

*Certain Collated Steel Staples from the People's Republic of China, attached as Exhibit 1.*[3] The

dialogue between Commerce and company personnel well-versed in the accounting and sales

records is absolutely critical to verification, a factor that Commerce failed to account for entirely

in the APF "verification," but which likely would have made a clear difference in the outcome in

the instant case.  A mere questionnaire does not substitute for this process.  A questionnaire

response has to be interpreted and understood by both parties without the benefit of the other

party's input, and therefore lends itself to easy misinterpretation.   APF had no opportunity to

correct misinterpretation about its company that the verifiers might have gleaned from the

evidence.

Given its standard practice at on-site verifications, and now its practice in virtual

verifications, the mere issuance of a questionnaire in this case was not reasonable or equitable.

The Government has failed to articulate *why* Commerce deemed a mere questionnaire (similar to

other supplemental questionnaires) to be a reasonable option for verification, instead of a remote

verification that would have simulated an actual on-site verification. Even the one Court case

cited by the Government, *Torrington Co. v. United States,* 68 F.3d 1347, 1352 (Fed. Cir. 1995),

involved an in-person verification albeit in an off-site location.   Gov't Brief at 23.  The

Government is unable to cite a single case in which the courts have interpreted the verification

requirement in the statute as having been satisfied by the issuance of a mere questionnaire.

The final straw was Commerce's lack of compliance with its own regulations requiring

the issuance of a verification report prior to the final determination.  19 C.F.R. § 351.307

requires Commerce to "report the methods, procedures, and results of a verification under this

---

[3] *See* 2020-2021 Antidumping Duty Administrative Review of Certain Collated Steel Staples
from the People's Republic of China: Verification Agenda, Case A-570-112 (Oct. 21, 2022).

139724985.1

section prior to making a final determination in an investigation . . . ."  Had Commerce complied with this regulation and issued a verification report prior to its determination, APF would have been alerted to the problems Commerce perceived and would have addressed them at the administrative level.   Due to the absence of a verification report, APF never had this opportunity.  In short, for these reasons, the issuance of a mere questionnaire is not a reasonable exercise of Commerce's obligation to conduct a verification.

## IV.   The Determination of Adverse Facts Available Is Unsupported by Substantial Evidence.

The Government's brief is essentially a reiteration of the arguments set forth by Commerce in its final determination[4] and in its accompanying Issues and Decision Memorandum (P.R. 244).   For example, the Government claims once again that APF failed to provide support for the machine speeds used to allocate conversion costs for each yarn denier range.  Gov't Response Brief at 29.   APF explained in the administrative proceeding and in its 56.2 Motion for Judgment on the Agency Record, that the company does not have documentation that support machine speeds, and that APF itself sets the machine speeds.   APF's Memorandum in Support of its Motion for Judgment on the Agency Record at 23.

Similarly, the Government repeats its claims that APF failed to tie the costs reported in its cost allocation summary to its accounting system.   Gov't Response Brief at 28.  Yet, APF has explained repeatedly and demonstrated exactly how its cost allocation summary reconciled directly to its trial balance.   APF's Memorandum in Support of its Motion for Judgment on the Agency Record at 20.

---

[4] *Polyester Textured from Indonesia: Final Affirmative Determination of Sales At Less Than Fair Value*, 86 Fed. Reg. 58,875 (Oct. 25, 2021).

9

In the interest of brevity, APF will not repeat each of the arguments concerning APF's cost submission from its 56.2 Motion for Judgment on the Agency Record submission.  APF respectfully requests that the Court refer to that previous submission for APF's arguments concerning why Commerce's determination of adverse facts available is not supported by the administrative record.

## V.      CONCLUSION

For the foregoing reasons, APF respectfully requests that this Court hold that Commerce's final determination was not supported by substantial evidence or was otherwise not in accordance with law.  This case should be remanded to Commerce with instructions to conduct an on-site or remote verification and to revise its final determination consistent with this Court's opinion.

Respectfully submitted,

*/s/ Lizbeth R. Levinson*

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

**FOX ROTHSCHILD LLP**
2020 K Street, N.W.
Suite 500
Washington D.C. 20006

Dated: November 8, 2022                    *Attorneys for APF*

**<u>Word Count Certificate of Compliance</u>**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,772 words.  This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ *Lizbeth R. Levinson*

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
 Tel:   202-794-1183
 Fax:   202-461-3102

November 8, 2022

# EXHIBIT 1

Barcode:4303212-01 A-570-112 REV - Admin Review 1/8/20 - 6/30/21 AR1

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-112
Administrative Review
POR: 1/8/2020-6/30/2021
~~Business Proprietary~~
E&C/OVIII:BCS/MG
**PUBLIC VERSION**

**October 21, 2022**

**Tianjin Hweschun Fasteners Manufacturing Co., Ltd.**
[                    ]
c/o Mr. Ronald M. Wisla
Fox Rothschild LLP
2020 K Street, N.W. - Suite 500
Washington, DC, 20006

Re:   2020-2021 Antidumping Duty Administrative Review of Certain Collated Steel Staples
      from the People's Republic of China: Verification Agenda

Dear Mr. Wisla:

In a letter dated September 20, 2022, we indicated that the U.S. Department of Commerce
(Commerce) intended to conduct verification of the sales and factors of production (FOP) data
reported by your client, Tianjin Hweschun Fasteners Manufacturing Co., Ltd. (Tianjin
Hweschun) and its toller [                ] in the above-referenced review through a remote,
virtual videoconference.[1]  The virtual sales and FOP videoconference verification is scheduled
for October 30 through November 3, 2022 (with a possibility of extending to November 4,
2022), via Cisco WebEx Meetings.  **Specifically, we intend to examine Tianjin Hweschun's
data on October 31 and November 1, 2022, and [            ]'s data on November 2 and 3,
2022.**  You will receive an email containing the link to the meeting at the email addresses you
have provided to Commerce officials.  Commerce officials Brian Smith and Max Goldman will
conduct the verification.

Attached you will find the agenda we intend to follow at the verification of your clients'
questionnaire responses in this administrative review.  We may, however, revise the order of this
agenda, or of specific items described in the agenda, depending on the needs of the verification.

The purpose of providing this agenda in advance of the actual verification is to allow you to brief
the appropriate company personnel on the items to be covered and the type of documentation
required to verify each item.  The attached agenda is not necessarily all inclusive and we reserve
the right to request any additional information or materials necessary for a complete verification.

Please reiterate to your clients the statutory requirement for verification and note the following
facts:  (1) the information gathered during the verification will be used solely for the purposes of
this proceeding; and (2) it is in your clients' interest to cooperate since failure to permit
verification may result in the Commerce relying on adverse "facts available" under section 776

---

[1] *See* Commerce's Letter, "Notification of Intent to Conduct Virtual Verification," dated September 20, 2022.

of the Tariff Act of 1930, as amended (the Act).

To facilitate the verification process, we have described the types of source documents that we will require to support the submitted data.  As you are aware, the time available for the verification is limited.  Consequently, we ask that the necessary information be gathered by the appropriate personnel prior to the start of the virtual verification, and be provided to the verifiers via Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS), **by 5:00 p.m. October 28, 2022** in advance of the start of the first scheduled verification meeting.  The attached agenda provides directions regarding the advance submission of documents that will be examined during verification.

In addition to examining supporting documentation, the verifiers will need to speak to appropriate personnel concerning your clients' questionnaire responses and other information submitted on the record of the proceeding.  Please ensure appropriate personnel are available to meet with the verifiers.   Please note that the names and titles of all company personnel and representatives participating in the verification, regardless of the role played, will be included in the verification report and treated as public information.

It is the responsibility of the respondent to be fully prepared for this verification.  If your clients are not prepared to support or explain a response item at the appropriate time, the verifiers will move on to another topic.  If, due to time constraints, it is not possible to return to that item, we may consider the item unverified, which may result in our basing the final results of this administrative review on the facts available, possibly including information that is adverse to the interests of your clients.

Please note that verification is not intended to be an opportunity for submission of new factual information.  New information will be accepted at verification only when:  (1) the need for that information was not evident previously; (2) the information makes minor corrections to information already on the record; or (3) the information corroborates, supports, or clarifies information already on the record.  Our acceptance of such information for examination at verification does not guarantee that we will be able to use it for our final results.

Please note that the purpose of verification is to verify the database and questionnaire responses which were submitted prior to verification.  Verification is not an opportunity to submit new factual information.  19 CFR 351.301(b) establishes time limits for the submission of new factual information and 19 CFR 351.302 establishes procedures for the extension of time limits, and the return of untimely filed or unsolicited material.  If minor errors were found in any of your previously submitted filings they must be presented at the start of verification.  If you present corrections of minor errors, you must file the information in ACCESS within **two business days of the start of verification.**

Section 777(c)(1) of the Act provides for the release of all business proprietary information, under administrative protective order (APO), presented to or obtained by Commerce during a proceeding, except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure.  As such, we request that you file final verification exhibits no later than the end of the fifth business day after

2

each verification is completed.  Unless you provide detailed, specific information to establish that there is a "clear and compelling need" to withhold a verification exhibit from disclosure, all business proprietary exhibits must be filed with Commerce as business proprietary documents in accordance with 19 CFR 351.303(b) and 351.303(f) no later than the end of the fifth business day after each verification is completed.  It is not necessary to create or file public versions of exhibits that are not public in their entirety.  Your submission of the exhibits must be accompanied by the certificate of service required by 19 CFR 351.303(f)(2) indicating service on the parties on the APO service list, as well as the certificates of factual accuracy included with the initial questionnaire issued to you by Commerce.  Exhibits that are public in their entirety (*e.g.*, public laws, annual reports) must be filed with Commerce in accordance with the requirements set forth in 19 CFR 351.303(b) and 351.303(f) for submission of public information.  If, upon review, Commerce finds that any of the exhibits filed do not match the exhibits that Commerce decided to take during verification, Commerce will notify the submitter and other parties, and will take appropriate steps to address any inconsistencies.

As noted above, upon the completion of verification, all final verification exhibits must be filed electronically using ACCESS.  An electronically-filed document must be received successfully in its entirety by Commerce's electronic records system, ACCESS, by 5:00 p.m. Eastern Time, unless otherwise specified by Commerce, on the fifth business day after verification is completed.  Documents excepted from the electronic filing requirement under 19 CFR 351.303(b)(2)(ii) must be filed manually (*i.e.*, in paper form) with the APO/Dockets Unit in Room 18022 and stamped with the date of receipt on the fifth business day after verification is completed.

If you have any questions regarding this verification, please contact Brian Smith at Brian.Smith@trade.gov or Max Goldman at Max.Goldman@trade.gov.  If, upon receipt of this agenda, you feel any of the verification procedures cannot be performed, please contact us immediately.

Sincerely,

Rebecca Trainor
Program Manager
AD/CVD Operations, Office VIII
Enforcement and Compliance

Enclosure