A-560-838<br>
Remand<br>
Slip. Op. 23-175<br>
POI: 10/01/2019 – 09/30/2020<br>
**Public Document**<br>
E&C/OVII: JR

*PT. Asia Pacific Fibers TBK v. United States*,
**673 F. Supp. 3d 1320 (CIT 2023)**
*Polyester Textured Yarn from Indonesia*

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (Court) issued on December 12, 2023.[1] These final results of redetermination concern Commerce's final affirmative determination in the less-than-fair-value (LTFV) investigation of polyester textured yarn (yarn) from Indonesia, covering the period October 1, 2019, through September 30, 2020.[2]

Consistent with the Court's *Remand Order*, Commerce: (1) under respectful protest,[3] issued a notification of deficiencies to PT. Asia Pacific Fibers TBK (Asia Pacific) on February 8, 2024, to identify the specific deficiencies found by Commerce in the company's In Lieu of On-Site Verification Questionnaire (ILOVQ) response and to provide it an opportunity to address those deficiencies;[4] and (2) prepared and issued, a verification report outlining the methods,

---

[1] *See PT. Asia Pacific Fibers TBK v. United States*, 673 F. Supp. 3d 1320 (CIT 2023) (*Remand Order*).
[2] *See Polyester Textured Yarn from Indonesia: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 FR 58875 (October 25, 2021) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).
[3] *See Viraj Group Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003).
[4] *See* Commerce's Letter, "Notification of Deficiencies Pursuant to Court Order," dated February 8, 2024 (Notification of Deficiencies).

procedures, and results of Commerce's verification.[5] Commerce has reconsidered its *Final Determination* and determined that the weighted-average dumping margin for Asia Pacific is now 9.20 percent.[6] Commerce has also revised the all-others rate to 8.72 percent.[7]

## II. BACKGROUND

On October 28, 2020, Commerce received a petition seeking the imposition of antidumping duties on yarn from Indonesia, filed on behalf of Unifi Manufacturing, Inc. and Nan Ya Plastics Corporation, America (collectively, the petitioner).[8] Commerce subsequently initiated the underlying LTFV investigation on yarn from Indonesia,[9] and selected Asia Pacific as a mandatory respondent.[10]

On June 3, 2021, Commerce published its *Preliminary Determination*.[11] Relevant here, Commerce relied on Asia Pacific's initial and supplemental questionnaire responses to calculate the company's preliminary weighted-average dumping margin.[12] Additionally, due to the global COVID-19 pandemic, Commerce notified Asia Pacific that the agency would satisfy its statutory obligation to verify all information relied upon in making its final determination through "alternative means" (*i.e.*, an ILOVQ).[13]

---

[5] *See* Memorandum, "Verification report of the in Lieu of On-Site Verification Questionnaire Responses of PT. Asia Pacific Fibers Tbk Pursuant to Court Order," dated May 15, 2024 (Verification Report); *see also Remand Order*, 673 F. Supp. 3d at 1333.
[6] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Order: Margin Calculation for PT. Asia Pacific Fibers Tbk," dated May 15, 2024 (Calculation Memorandum).
[7] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Order: Calculation for the All-Others Rate," dated May 15, 2024 (All-Others Rate Memorandum).
[8] *See* Petitioner's Letter, "Antidumping and Countervailing Duty Petitions," dated October 28, 2020 (Petition).
[9] *See Polyester Textured Yarn from Indonesia: Initiation of Antidumping Duty Investigation*, 85 FR 74680 (November 23, 2020).
[10] *See* Memorandum, "Selection of Additional Respondent," dated December 28, 2020.
[11] *See Polyester Textured Yarn from Indonesia: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 86 FR 29742 (June 3, 2021) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM).
[12] *See Preliminary Determination*, 86 FR at 29743, and *Preliminary Determination* PDM at 12-20.
[13] *See Preliminary Determination*, 86 FR at 29742-44; *see also* Commerce's Letter, "Revised In Lieu of Verification Questionnaire for PT. Asia Pacific Fibers Tbk," dated August 4, 2021; and section 782(i)(1) of the Tariff Act of 1930, as amended (the Act).

On October 25, 2021, Commerce published its affirmative *Final Determination* in the *Federal Register*.[14]  As part of that determination, Commerce elaborated on changes to the *Preliminary Determination*, including its reliance on the application of total facts available with adverse inferences to Asia Pacific, pursuant to sections 776(a)(1) – 776(a)(2)(A)-(D) of the Act and section 776(b) of the Act, based on the fact that Asia Pacific's cost and sales data could not be verified and thus were unreliable because the respondent failed to provide the information and documentation which was necessary to support such data.[15]  That is, Commerce found that Asia Pacific's ILOVQ Response was incomplete and unreliable, containing numerous significant inconsistencies which resulted in discrepancies with previously reported information.[16]  As such, pursuant to section 776(b) of the Act, Commerce determined that Asia Pacific failed to cooperate to the best of its ability, and thus, Commerce applied adverse inferences in selecting from among the facts otherwise available.[17]  Consequently, Commerce assigned Asia Pacific a margin based on total adverse facts available of 26.07 percent.[18]  Asia Pacific challenged Commerce's *Final Determination*, at the Court.

On December 12, 2023, the Court remanded for Commerce to:  (1) prepare a verification report outlining the "methods, procedures, and results" of its verification pursuant to 19 CFR 351.307(c) and provide Asia Pacific, a reasonable opportunity to remedy deficiencies found by Commerce and all parties an opportunity to file case briefs that "present all arguments that continue," in the party's view, "to be relevant to {Commerce's} final determination," as

---

[14] *See Final Determination*, 86 FR at 58875.
[15] *See Final Determination* IDM at 6-7.
[16] *Id.*; *see also* Memorandum, "Final AFA and Selection of AFA Rate for PT. Asia Pacific Fibers Tbk," dated October 18, 2021 (AFA Memorandum).
[17] *Id.*
[18]  *See Final Determination*, 86 FR at 58876, and *Final Determination* IDM at 6-7; *see also* AFA Memorandum.

provided under 19 CFR 351.309(c)(2); and (2) reconsider its *Final Determination*, including its application of adverse facts available (AFA) to Asia Pacific.[19]

On February 8, 2024, in accordance with the *Remand Order*, Commerce provided Asia Pacific the opportunity to address deficiencies in its ILOVQ Response.[20] For example, Commerce requested that Asia Pacific provide translated documents, additional narrative explanation of how to reconcile its sales reporting with supporting documentation, and additional supporting documentation for its quantity and value reconciliation.

On March 21, 2024, Asia Pacific responded with over 800 pages of information.[21] Thereafter, Commerce prepared the verification report, issued with the draft results of redetermination, outlining the methods, procedures, and results of Commerce's verification pursuant to the *Remand Order*.[22]

### III.   ANALYSIS

As outlined in the verification report, no noted deficiencies remain with respect to Asia Pacific's ILOVQ Response.[23] Asia Pacific has now provided the information and documentation which is necessary for Commerce to verify its reporting, and Asia Pacific has adequately addressed the concerns listed in the *Final Determination*. Specifically, Asia Pacific provided the requested translations, supporting documentation, and narrative explanation of its reporting methodologies. Asia Pacific also provided a narrative description of how the reported costs were calculated and how these costs tie back to its accounting system by providing the necessary

---

[19] *See Remand Order*, 673 F. Supp. 3d at 1333.
[20] *See* Notification of Deficiencies.
[21] *See* Asia Pacific's Letter, "Submission of Asia Pacific Fibers Response to Notice of Deficiency," March 21, 2024; *see also* Commerce's Letters, "Extension for PT. Asia Pacific Fibers Tbk's Response to Notice of Deficiency," dated February 21, 2024; and "2nd Extension Request for PT. Asia Pacific Fibers Tbk's Response to Notice of Deficiency," dated March 14, 2024.
[22] *See* Verification Report.
[23] *Id.*

supporting documentation from its accounting and production systems. As a result, Commerce was able to reconcile Asia Pacific's sales and cost reporting. Consequently, on remand, Commerce has verified Asia Pacific's cost and sales data reporting.

Therefore, for these final results of redetermination, we find that the application of AFA to Asia Pacific is not warranted and Commerce has relied on Asia Pacific's information to calculate its weighted-average dumping margin. Commerce has not recalculated Asia Pacific's weighted-average dumping margin for these final results of redetermination. Instead, Commerce relied on the weighted-average dumping margin calculated for Asia Pacific in the *Preliminary Determination*.[24] For additional discussion of Commerce's calculation methodology, *see* the Calculation Memorandum.[25]

## IV.   COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On May 15, 2024, we released the draft results of redetermination and invited parties to comment.[26] In response, Asia Pacific asserts that Commerce has fully implemented the Court's instructions and that Commerce's draft results of redetermination are in accordance with the law.[27] No other interested party commented on the Draft Results.

---

[24] *See Preliminary Determination*, 86 FR at 29743, and *Preliminary Determination* PDM at 10-20.
[25] *See* Calculation Memorandum; *see also Preliminary Determination*, 86 FR at 29743, and *Preliminary Determination* PDM at 10-20.
[26] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Remand, *PT. Asia Pacific Fibers TBK v. United States,* 673 F. Supp. 3d 1320 (CIT 2023)," dated May 15, 2024 (Draft Results).
[27] *See* Asia Pacific's Letter, "Comments on Draft Results of Redetermination," dated May 22, 2024.

## V. FINAL RESULTS OF REDETERMINATION

For these final results of redetermination, we made no changes to the Draft Results. As a result, consistent with the Draft Results, the weighted-average dumping margin for Asia Pacific, and the all-others rate[28] for the period October 1, 2019 to September 30, 2020 are as follows:

| Producer or Exporter | Weighted-Average Dumping Margin (percent) |
|---|---|
| PT. Asia Pacific Fibers TBK | 9.20 |
| All-Others | 8.72 |

Because the weighted-average dumping margins for Asia Pacific and all-other companies are different from those in the *Final Determination*, we intend to issue a *Timken*[29] notice with the amended final determination should the Court sustain these final results of redetermination. In addition, Commerce intends to issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

8/8/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus,
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[28] *See* section 735(d)(5)(A) of the Act ("{T}he estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, and any margins determined entirely under section 776"); and *United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1254 (CIT 2018) (holding that Commerce has an established practice of recalculating the all-others rate upon revision of a mandatory respondent's rate); *see also Preliminary Determination*, 86 FR at 29743, and All-Others Rate Memorandum.

[29] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).