Slip Op. 24-113

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PT. ASIA PACIFIC FIBERS TBK,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>UNIFI MANUFACTURING, INC. AND NAN YA PLASTICS CORPORATION,<br><br>    Defendant-Intervenors. | Before: Richard K. Eaton, Judge<br><br>Court No. 22-00007 |

**OPINION**

[U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand are sustained.]

Dated: October 11, 2024

*Lizbeth R. Levinson*, Fox Rothschild LLP, of Washington, D.C., for Plaintiff PT. Asia Pacific Fibers Tbk. With her on the brief were *Alexander D. Keyser* and *Brittney R. Powell*.

*Collin T. Mathias*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant the United States. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *L. Misha Preheim*, Assistant Director. Of counsel was *Leslie Mae Lewis*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Julia A. Kuelzow*, Kelley Drye & Warren LLP, of Washington, D.C., for Defendant-Intervenors Unifi Manufacturing, Inc. and Nan Ya Plastics Corp. With her on the brief were *Paul C. Rosenthal*, *David C. Smith*, and *Melissa M. Brewer*.

Eaton, Judge: Before the court are the U.S. Department of Commerce's ("Commerce" or the "Department") results of redetermination pursuant to the court's remand order in *PT. Asia Pacific Fibers Tbk v. United States*, 47 CIT __, 673 F. Supp. 3d 1320 (2023) ("*Asia Pacific*"). *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 58-1 ("Remand Results"). The Remand Results are uncontested, and the parties ask the court to sustain them.[1] *See* Pl.'s Cmts., ECF No. 60; Def.'s Resp., ECF No. 61.

The court will sustain the Remand Results if they comply with the court's remand order, are supported by substantial evidence on the record, and are otherwise in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). For the following reasons, the court sustains the Remand Results.

## BACKGROUND

The relevant facts and procedural history are set out in the court's prior Memorandum Opinion and Order, familiarity with which is presumed. *See Asia Pacific*, 47 CIT at __, 673 F. Supp. 3d at 1323-27.

This case involves Commerce's final affirmative antidumping determination in the investigation of polyester textured yarn from Indonesia. *See Polyester Textured Yarn From Indonesia*, 86 Fed. Reg. 58,875 (Dep't of Commerce Oct. 25, 2021) ("Final Determination") and accompanying Issues and Decision Mem., PR 240. Plaintiff PT. Asia Pacific Fibers Tbk ("Plaintiff" or "Asia Pacific") is a manufacturer of the subject yarn and a mandatory respondent in the investigation.

---

[1] Defendant-Intervenors Unifi Manufacturing, Inc. and Nan Ya Plastics Corporation did not file comments on the Remand Results.

The underlying antidumping investigation took place during the COVID-19 global pandemic. The investigation covered the period October 1, 2019, through September 30, 2020.

Commerce preliminarily determined an individual antidumping duty rate of 9.20% for Asia Pacific based on the company's reported information. *See Polyester Textured Yarn From Indonesia*, 86 Fed. Reg. 29,742, 29,743 (Dep't of Commerce June 3, 2021) ("Preliminary Determination"). Following its Preliminary Determination, Commerce conducted verification by questionnaire in lieu of on-site verification. Before issuing the Final Determination, however, Commerce neither produced a verification report, nor issued a supplemental verification questionnaire to notify Asia Pacific that it had found deficiencies in the company's verification response.[2] *See Asia Pacific*, 47 CIT at __, 673 F. Supp. 3d at 1324-26. Thus, unaware of Commerce's verification findings, Asia Pacific had no reason to believe that its verification response was lacking nor was it afforded the opportunity to correct any deficiencies. Also, Asia Pacific was not provided with the opportunity to argue (in an administrative case brief) against the

---

[2]　　Pursuant to 19 U.S.C. § 1677m(d):

> If [Commerce] . . . determines that a response to a request for information . . . does not comply with the request, [Commerce] . . . shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations . . . under this subtitle. If that person submits further information in response to such deficiency and either—
>
> 　　(1) [Commerce] . . . finds that such response is not satisfactory, or
>
> 　　(2) such response is not submitted within the applicable time limits,
>
> then [Commerce] . . . may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d).

Court No. 22-00007                                                                                                   Page 4

use of facts available or adverse facts available in the Final Determination. *See* 19 C.F.R. § 351.309(c)(1)-(2) ("Any interested party or U.S. Government agency may submit a 'case brief,'" and "[t]he case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination . . ."). Ultimately, based on "total adverse facts available"[3] ("AFA"), Commerce determined a final antidumping duty rate for Asia Pacific of 26.07%. *See Polyester Textured Yarn From Indonesia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 86 Fed. Reg. 71,031, 71,032 (Dep't of Commerce Dec. 14, 2021).

Plaintiff appealed the 26.07% rate to this Court, challenging Commerce's verification procedure and its use of AFA as unlawful and unreasonable. *See Asia Pacific*, 47 CIT at __, 673 F. Supp. 3d at 1329.

Taking into account the circumstances presented by the COVID-19 global pandemic when considering the lawfulness and reasonableness of Plaintiff's and Commerce's actions, the court found that "[Commerce's] failure to produce a verification report was unlawful and that the verification procedure employed in this case was unreasonable and an abuse of discretion." *Id.* at __, 673 F. Supp. 3d at 1331. The court remanded the case to Commerce with instructions to

> prepare a verification report of the "methods, procedures, and results" of verification as provided under 19 C.F.R. § 351.307(c), and provide (1) Asia Pacific a reasonable opportunity to place information on the record addressing any deficiencies found by Commerce; and (2) all parties the opportunity to file case briefs that "present all arguments that continue," in the party's view, "to be relevant

---

[3] "'Total adverse facts available' is not defined by statute or agency regulation. Commerce uses this term 'to refer to [its] application of adverse facts available . . . to the facts respecting all of [a respondent's] production and sales information that the Department concludes is needed for an investigation or review.'" *BlueScope Steel Ltd. v. United States*, 45 CIT __, __, 548 F. Supp. 3d 1351, 1354 n.2 (2021) (emphasis omitted) (quoting *Nat'l Nail Corp. v. United States*, 43 CIT __, __, 390 F. Supp. 3d 1356, 1374 (2019)). In other words, Commerce assigns an antidumping rate based entirely on facts selected using an adverse inference, ignoring all of a respondent's information.

> to the Secretary's final determination," as provided under 19 C.F.R. § 351.309(c)(2); [and to] . . . reconsider its Final Determination, including its finding that the use of adverse facts available was warranted, taking into account any information and arguments that the parties present as relevant to Commerce's Final Determination.

*Id.* at _, 673 F. Supp. 3d at 1333. Thereafter, Commerce conducted a remand proceeding, the results of which are before the court.

## DISCUSSION

In the Remand Results, Commerce described the steps it took to comply with the court's remand order in *Asia Pacific*:

> Commerce: (1) under respectful protest, issued a notification of deficiencies to PT. Asia Pacific Fibers TBK (Asia Pacific) on February 8, 2024, to identify the specific deficiencies found by Commerce in the company's In Lieu of On-Site Verification Questionnaire (ILOVQ) response and to provide it an opportunity to address those deficiencies; and (2) prepared and issued, a verification report outlining the methods, procedures, and results of Commerce's verification.

Remand Results at 1-2. Moreover, Commerce stated, by way of explanation, that on remand it found that the record evidence did not support the use of AFA, and instead relied on the 9.20% rate that had been determined for Asia Pacific in the Preliminary Determination based on the company's reported information:

> As outlined in the verification report, no noted deficiencies remain with respect to Asia Pacific's ILOVQ Response. Asia Pacific has now provided the information and documentation which is necessary for Commerce to verify its reporting, and Asia Pacific has adequately addressed the concerns listed in the *Final Determination*. Specifically, Asia Pacific provided the requested translations, supporting documentation, and narrative explanation of its reporting methodologies. Asia Pacific also provided a narrative description of how the reported costs were calculated and how these costs tie back to its accounting system by providing the necessary supporting documentation from its accounting and production systems. As a result, Commerce was able to reconcile Asia Pacific's sales and cost reporting. Consequently, on remand, Commerce has verified Asia Pacific's cost and sales data reporting.

> Therefore, for these final results of redetermination, we find that the application of AFA to Asia Pacific is not warranted and Commerce has relied on Asia Pacific's information to calculate its weighted-average dumping margin. Commerce has not recalculated Asia Pacific's weighted-average dumping margin for these final results of redetermination. Instead, Commerce relied on the weighted-average dumping margin calculated for Asia Pacific in the *Preliminary Determination*.

Remand Results at 4-5; *id.* at 2 (determining that "the weighted-average dumping margin for Asia Pacific is now 9.20 percent. Commerce has also revised the all-others rate to 8.72 percent.").

There is no dispute among the parties with respect to the manner in which Commerce conducted the remand proceeding or that the Remand Results are supported by substantial evidence and otherwise in accordance with law. *See* Pl.'s Cmts. at 2 ("Commerce's Final Remand Results are consistent with the Court's Remand Order and are in accordance with law. Accordingly, we respectfully request that the Court sustain Commerce's Final Remand Results."); *see also* Def.'s Resp. at 2 ("Because no other comments [besides Plaintiff's] were filed and no party contests Commerce's remand results, it is appropriate for the Court to sustain them and enter judgment accordingly.").

## CONCLUSION

Based on the foregoing, the court holds that the Remand Results are in compliance with its remand order, supported by substantial evidence on the record and otherwise in accordance with law, and are thus sustained. Judgment will be entered accordingly.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Richard K. Eaton
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Judge

Dated: October 11, 2024
　　　New York, New York